UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 09-49-GWU

THE ESTATE OF HAGER MICHAEL DICKENS
By and Through JOE DONTA, EXECUTOR,                              PLAINTIFF,

VS.                     **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                                 DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.  Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2.  If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

1

>   3.  The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.
>
>   4.  At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.
>
>   5.  If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

09-49  Hager Michael Dickens

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting

most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

Hager Michael Dickens was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a right shoulder impingement syndrome, degenerative joint disease of both shoulders, obesity, and being status post left knee surgery, left carpal tunnel ulnar release and ulnar decompression of the left elbow. (Tr. 87). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Dickens retained the residual functional capacity to perform his past relevant work as an office clerk and security guard, and therefore was not entitled to benefits. (Tr. 90-7).[1] The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 48 to 50, high school education, and work experience could perform any jobs if he were limited to "light" level exertion, and also had the following non-exertional limitations. He: (1) could not balance or climb ladders, ropes, and scaffolds; (2) could occasionally kneel, crouch, stoop, and crawl; (3) could not perform any overhead reaching with his right upper extremity; (4) could perform no frequent reaching with either upper extremity; and (5) could not perform

---

[1]Dickens passed away on August 22, 2009. <u>Memorandum in Support of Plaintiff's Motion for Judgment</u>, Docket Entry No. 10, p. 1.

any repetitive pushing or pulling with the upper extremities. The VE responded that the plaintiff with these restrictions could still perform the jobs of office clerk and watch guard as he reportedly performed them. (Tr. 34-6).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.

Dickens alleged disability beginning May 27, 2005 due to problems with his right shoulder, elbow, and both knees. (Tr. 162). He testified that he had worked as a security guard in a chemical plant until that time, when he was injured. Medical records show that Dickens underwent surgical repair for a torn right biceps tendon, followed by an arthroscopic right shoulder subacromial decompression and debridement of a partial rotator cuff tear and a revision of the subacromial decompression and distal clavicle resection, all performed by Dr. Luis Bolano between November, 2005 and November, 2006. (Tr. 234-5, 244-5, 252, 259-60). After a motor vehicle accident in October, 2005, resulting in a fractured left lateral tibial plateau, Dr. Ralph Touma performed arthroscopic surgery of the left knee for a torn medial and lateral meniscus in February, 2006. (Tr. 572). The surgery had to be repeated in April, 2007 after another motor vehicle accident. (Tr. 570). After complaints of numbness in the left hand, and an nerve conduction velocity study, Dr. Touma performed a left carpal tunnel release surgery in January, 2008. (Tr. 566, 568). Further surgery was necessary in February, 2008 after an MRI showed

impingement syndrome of the left shoulder. (Tr. 567, 573). Not surprisingly, Dickens testified to being in constant pain. (Tr. 19, 29-30).

The plaintiff asserts on appeal that the ALJ improperly rejected the opinions of two treating physicians. Dr. Bolano completed a residual functional capacity form on August 30, 2008 which offered no opinion on lifting, standing, walking, or sitting, but opined that Dickens could occasionally carry up to 10 pounds, could not do repetitive pushing and pulling, could not crawl, climb, or "reach above," could occasionally bend, squat, stoop, crouch, and kneel, and could occasionally be exposed to unprotected heights, moving machinery, and driving automotive equipment. (Tr. 602-6). The only reason given for these restrictions was a right shoulder impairment. The ALJ accepted the restrictions on overhead reaching and pushing and pulling, but rejected the remainder of Dr. Bolano's assessment because she felt that it appeared to have been based on the claimant's subjective complaints rather than objective evidence. (Tr. 96). The ALJ noted that there had been no indication of office visits to this source after September, 2007, and that office notes in that year showed relatively minimal findings of mild pain on flexion and mild motor strength loss, and with a full passive range of motion. (Tr. 402, 404, 526, 530).

Another physician, Dr. Timothy Garner, began treating the plaintiff in January, 2008, and completed a functional capacity assessment on September 15, 2008. Dr. Garner restricted the plaintiff to less than full-time work, opining that he

9

could stand two hours, walk one hour, and sit one hour in an eight-hour day, lift no more than 10 pounds occasionally, was unable to grasp, push, pull, perform fine manipulation, use his feet repetitively, or perform any postural activities including bending, squatting, and stooping. (Tr. 607-9). He also precluded all exposure to heights, moving machinery, temperature changes, noise, dust, fumes, and gases, and driving. (Tr. 610). The reasons given were chronic low back pain and osteoarthritis of the shoulders. The ALJ declined to accept this assessment because of limited findings in Dr. Garner's treatment notes and because he had "only five sessions with the claimant." (Tr. 96).

No other treating or examining source provided an opinion regarding restrictions. The only other medical opinion was provided by a state agency reviewing source, Dr. Allen Dawson, who reviewed the evidence as of June 13, 2007 and limited the plaintiff to "light" level exertion with limited reaching in all directions and no reaching overhead. (Tr. 519-25). Dr. Dawson affirmed a previous assessment by a state agency source who was apparently not a medical doctor. (Tr. 347-54). The ALJ stated that she found their opinions to be consistent with the entirety of the evidence. (Tr. 96).

In general, the opinion of a treating physician is entitled to considerable weight where it is supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). This regulation explains that treating sources

are most likely to be able to provide a detailed, longitudinal picture of the claimant's medical impairments and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." Id. The regulation goes on to say that if the opinion of a treating source is not accorded controlling weight the ALJ must apply certain factors, such as the length of the treatment relationship and the frequency of examination, the supportability of the opinion, the consistency with the opinion of the record as a whole, and the specialization of the treating source in determining what weight to give it. Therefore, even the opinion of a treating source is not automatically entitled to complete deference, as has long been recognized. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985).

      The ALJ provided specific reasons for discounting the opinion of Dr. Bolano, noting the relatively mild objective findings and also citing the length of time that had elapsed between his last recorded examination and the opinion. While the latter rationale may not be an appropriate basis for rejecting the opinion of a treating physician, Gambill v. Bowen, 823 F.2d 1009, 1013 (6th Cir. 1987), the ALJ is not required to accept restrictions that are not based on objective medical evidence. As the Sixth Circuit noted in Warner v. Commissioner of Social Security, 375 F.3d 387, 391 (6th Cir. 2004), there was no reason to accept a physician's assertion that his patient would have limitations in his walking and standing ability where there was no evidence of an impairment to the lower extremities. In the present case, it is

11

09-49 Hager Michael Dickens

unclear how a right shoulder impairment could have limited the plaintiff's ability to bend, squat, stoop, crouch, and kneel.

The rejection of Dr. Garner's opinion is more problematic. The fact that Dr. Garner saw the plaintiff five times, by itself, does not, as counsel for the plaintiff suggests, appear to be a good reason to discount his opinion, particularly since the visits were over an eight-month period. (Tr. 612-16). The ALJ noted that the physician identified tenderness, decreased range of motion, and muscle spasm, but concluded that his assessment "appears to have been based on the claimant's subjective complaints." (Tr. 96).[2]

If the opinions of the treating sources are rejected, however, this leaves only the opinion of Dr. Dawson. Social Security Ruling (SSR) 96-6p limits the circumstances in which the opinions of non-examining state agency sources are entitled to greater weight than treating or examining sources. It states that a non-examiner's opinion may be entitled to greater weight if it is "based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detail and comprehensive information than what was available to the individual's treating source." The Sixth Circuit has also noted the importance of a review of a complete record. Barker v.

---

[2]The plaintiff alleges that this conclusion was unwarranted and that Dr. Garner had all the records available for review. Memorandum in Support of Plaintiff's Motion for Judgment, Docket Entry No. 10, p. 4. To the extent there is a dispute on this point, it can be resolved on remand.

Shalala, 40 F.3d 789, 794 (6th Cir. 1994). In the present case, Dr. Dawson clearly did not have a review of a complete case record because his opinion was completed in June, 2007, after which the plaintiff was involved in another motor vehicle accident and had carpal tunnel surgery and left shoulder surgery. (Tr. 567-8, 586). Under the circumstances, a complete review of the case record by a medical adviser is required under the regulations if the treating physician opinion is not to be accepted.

The court will briefly discuss two additional arguments made by the plaintiff.

First, he makes detailed criticisms of the ALJ's findings that the plaintiff was not entirely credible. Generally, an ALJ's credibility finding is entitled to great deference. See, e.g., Williamson v. Secretary of Health and Human Services, 796 F.2d 146, 150 (6th Cir. 1986). In the present case, although some of the assertions made by the ALJ are arguable, they are not clearly erroneous. For example, the ALJ noted that the plaintiff had testified that he had been unable to perform the duties in his last security guard job, such as walking up and down steps, but emergency department treatment notes show that he fell down a flight of stairs. (Tr. 27, 93, 282). The plaintiff additionally alleged that he had knocked out teeth in the fall (Tr. 32), but the emergency department record showed only a fracture of the teeth (Tr. 224-5). The ALJ was also critical of testimony from the plaintiff that he could not drive currently (Tr. 12) although he had been the driver in several motor vehicle accidents (Tr. 93). While the ALJ drew the most negative possible

13

09-49 Hager Michael Dickens

inferences from these inconsistencies, and the plaintiff's counsel offers alternative interpretations, the court cannot say that there was no evidence to support the ALJ's conclusion. Therefore, this argument is without merit.[3]

Finally, the plaintiff's arguments regarding the ALJ's evaluation of the VE testimony amounts to an assertion that the treating physician opinions should have been given controlling weight. Obviously, if the treating physician opinions were accepted, the VE testified that there would be no jobs that the plaintiff could perform. (Tr. 40-2). Therefore, the assertion that the ALJ's analysis of the VE testimony was flawed in itself is without merit.

The decision will be remanded for further consideration.

This the 18th day of February, 2010.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**

---

[3] The plaintiff does not challenge instances of drug-seeking behavior cited by the ALJ. (Tr. 94).